UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MICHAH ANTOINE** | * | **CIVIL ACTION NO. 14-3381** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

  This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Michah Antoine, born in 1991, filed an application for childhood benefits in 1998. Pursuant to that application, claimant received supplemental security income ("SSI") benefits through childhood. After an Age 18 Redetermination, an Administrative Law Judge ("ALJ") terminated those benefits by decision dated February 1, 2011. (Tr. 57, 250).

  Subsequently, claimant filed an application for SSI on March 15, 2012, alleging disability as of January 9, 1991, due to a learning disability, anemia, anger problems and depression.[1] After denial of the application at the administrative level, claimant filed a Complaint for judicial review with this Court on December 5, 2014.

---

[1] The onset date was amended April 10, 2011. (Tr. 22).

## I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id*., 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. Id. at 393.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook*, 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.  *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).  The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified.  *Id*. at 1302.  Throughout the process, the ultimate burden of establishing disability remains with the claimant.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

## III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is supported by substantial evidence, based on the following:

**A. Medical Evidence**

Claimant has a history of mental impairments.  He was treated at Iberia Comprehensive Community Health Center ("ICCHC") from April, 2009 to June, 2011.  A report dated August 10, 2009, showed that claimant had not refilled his psychotropic medications since December 2008.  (Tr. 229).  He claimed that Dr. Keith Ramsey told him to stop taking his medication.  However, there is nothing in the medical record to confirm this report.  Dr. Ramsey was prescribing Strattera.  (Tr. 230).

By November 2009, claimant had improved on his medication.  (Tr. 234).  He had normal speech, normal thought content and no impairment in his thought processes.  (Tr. 234-35).  He was prescribed Geodon.

On February 25, 2010, claimant presented in a "great" mood with congruent affect. (Tr. 237).  He had a more stable mood overall.  On March 25, 2010, he was doing much better on his current dose of Geodon.  (Tr. 238).

In April 2011, claimant was admitted to Greenbrier Behavioral Health ("Greenbrier") with a history of chronic paranoid schizophrenia with associated symptoms of hearing voices telling him to hurt himself and others. (Tr. 182-89). He had taken an intentional overdose of unknown pills. He reported difficulty sleeping and was staying on the street at night. He reported that he had done well on Geodon, but did not know why he had stopped taking it. (Tr. 184).

Claimant was admitted and restarted on Geodon. His discharge diagnosis was schizophrenia, in poor compliance with treatment. (Tr. 183). His Global Assessment of Functioning ("GAF") score was 40 to 50. Dr. Mohammad Anwar instructed him to followup with ICCHC. (Tr. 183).

In June, 2011, claimant was readmitted to Greenbrier with complaints that he was hearing voices which were telling him to kill himself. (Tr. 192). He was very depressed and reported racing thoughts, anxiety and chronic worry with feelings of helplessness, hopelessness and worthlessness. At time of admission, he was not on any medications. (Tr. 190).

On inpatient stabilization, claimant showed good response to medication adjustments. His discharge diagnosis was schizoaffective disorder and questionable compliance with medications. (Tr. 194). His prognosis was fair for continued stabilization with medication compliance and adequate followup. (Tr. 191). His GAF score was 45.

On followup at ICCHC in October 2011, claimant sought medication refills and inquired about penis enlargement. (Tr. 241-42). He was in a secure living environment with no abrupt symptoms noted. (Tr. 241). His affect was normal. (Tr. 242). Evaluation of connectedness showed deficiency.

The assessment was atypical psychosis. Claimant was instructed to followup with his medical health provider for continued treatment.

Claimant's next treatment was almost a year and a half later in January 2013. (Tr. 255-57). At that time, he was treated at Greenbrier for major depressive disorder, recurrent, severe. He was prescribed Celexa. (Tr. 255). He was instructed to followup at ICCHC. However, he did not seek further treatment.

**B. Hearing Testimony**

At the hearing on July 29, 2013, claimant was 22 years old. (Tr. 28). He had attended special education classes through the ninth grade. He lived in a house with his mother, aunt and uncle.

As to activities, claimant visited with his aunt, watched television and played video games.[2] (Tr. 32). He occasionally cut the grass and helped with simple chores. (Tr.

---

[2] Many courts, including the Fifth Circuit, have accepted television viewing, reading a newspaper, driving a car and speaking on the telephone as valid evidence that the plaintiff can concentrate, usually when other relevant facts accompany it and the RFC limits the plaintiff to simple tasks. *See, e.g., Pratt v. Barnhart*, 158 F. App'x. 643, 644-45 (5th Cir. 2005) (noting that watching television "suggest[ed] some ability to concentrate"); *Nace v. Comm'r of Soc. Sec.*, 2015 WL 1511055, at *26 (E.D. Mich. Mar. 25, 2015).

33). Additionally, he occasionally played basketball and attended church. (Tr. 34). He had never driven. (Tr. 29).

Claimant testified that he used to drink alcohol because he was depressed. (Tr. 30). However, he had stopped drinking. He stated that he had been in jail for about three months in 2013, and was currently on probation. (Tr. 31, 35-36).

Wendy P. Klamm, vocational expert ("VE"), testified that claimant had not done any work for a substantial length of time. (Tr. 50). The ALJ posed a hypothetical in which he asked her to assume a claimant of the claimant's age, education and work experience with no exertional limitations, but, because of emotional problems, he could not do complex or detailed work; could do work requiring simple one, two, three-step instructions, required occasional interaction with others, and was more comfortable working with things rather than people. (Tr. 51). In response the VE testified that he could work as a hand packager, medium, unskilled, of which there were 1,035 jobs statewide and 166,945 nationally, and cleanup worker, medium, unskilled, of which there were 14,555 jobs statewide and 1,084,770 jobs nationally. (Tr. 51). When the ALJ changed the hypothetical to a claimant who had emotional problems which precluded him for performing jobs with simple one or two-step instructions or might require him to miss work for four or five days a month, Ms. Klamm testified that he would be unable to do those jobs. (Tr. 51-52).

**C. Argument**

Claimant argues that the ALJ erred: (1) in relying on his own medical opinions to determine the severity and duration of claimant's mental impairments; (2) in his assessment of claimant's ability to sustain employment, and (3) in failing to fully develop the record in this matter.

First, claimant argues that the ALJ relied on his own medical opinions to find that claimant's impairments were not severe. The ALJ determined that claimant had severe impairments of schizophrenia with depression, attention deficit hyperactivity disorder and cognitive disorder. (Tr. 13). However, he found that claimant did not have an impairment or combination of impairments which met or equaled the severity of a listing.

Claimant argues that the ALJ erroneously relied on his "lay intuition" in finding that claimant's impairments were not severe. [rec. doc. 10, p. 7]. However, a review of the decision shows that the ALJ relied on the medical evidence in determining the severity of claimant's condition, rather than "playing doctor" as asserted by claimant.[3]

First, the ALJ noted that claimant had a history of noncompliance with treatment. (Tr. 14-16). The medical records confirm that claimant repeatedly failed to take or refill his medications as prescribed. (Tr. 229, 184, 190, 229, 255). It is well established that

---

[3] In the case cited by claimant, *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit noted that the "Seventh Circuit has, in several cases, warned ALJs against 'playing doctor' and making their own independent medical assessments." *Id*. at 622. However, the Fifth Circuit declined to reach the merits of this argument, noting that even if the ALJ was in error such error was harmless because "the overwhelming factor in the decision was medical evidence from a variety of sources indicating that Frank could indeed hold down her old job as a clerical worker." *Id*.

failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Additionally, the ALJ noted that once claimant was on appropriate medication, he had significant improvement.  (Tr. 14).  This is confirmed by claimant's treating sources, who found that he showed good response to medication.  (Tr. 192, 234, 237).  If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Further, the ALJ noted that claimant failed to followup with recommended treatment.  (Tr. 16).  He observed that a medical record from ICCHC dated August 10, 2009, showed that claimant had not refilled his psychotropic medications since December 2008.  (Tr. 229).  While claimant claimed that he was instructed to stop taking his medication, there is no medical record confirming this report.

Another instance of noncompliance occurred in April, 2011, when Dr. Anwar instructed him to followup with ICCHC.  (Tr. 183).  He noted that claimant had an appointment with ICCHC scheduled for May 9, 2011.  However, no records exist that claimant ever showed up for this visit.

A third incident happened in June, 2011, claimant was not on any medications at the time of readmission to Greenbrier.  (Tr. 190).  While claimant followed up at ICCHC in October 2011 (Tr. 241-242), he did not seek treatment again until  almost a year and a

half later.  (Tr. 255-56).  Again, he was instructed to followup, but did not seek further treatment.  (Tr. 255).

It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms).  The record shows that claimant repeatedly failed to followup with treatment as prescribed.  As the ALJ's finding is supported by the evidence, it is entitled to deference.

Next, claimant argues that the ALJ erred in assessing his residual functional capacity under SSR 96-8p, which provides, in pertinent part, as follows:

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

The ALJ found that claimant retained the RFC to perform work involving one-to-two step instruction, no more than occasional interaction with others, and work mainly with things, rather than people.  (Tr. 14).  With these limitations, the vocational expert

was able to identify jobs existing in significant numbers in the national economy which claimant could perform. (Tr. 17, 51).

Claimant argues that the ALJ did not analyze his "regular and continuing" capability, but instead relied on adverse credibility findings. [rec. doc. 10, p. 6]. However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank*, 326 F.3d at 619. As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if [plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

(emphasis added). *Id*. at 619.

Here, claimant argues that he is unable to maintain employment. However, claimant has not shown that his condition "waxes and wanes" in its manifestation of disabling symptoms as required by *Frank*. *Id*. at 619. Instead, the record shows that claimant's condition is controllable with medications. Thus, the ALJ was not required to make a separate finding that claimant could sustain employment.

Finally, claimant argues that the ALJ failed to fully develop the record. It is true that the ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy his duty, his decision is not substantially justified. *Id*. Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced. *Id*. Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Id*. at 57 n. 22.

Claimant asserts that the ALJ should have referred him for a consultative examination or retained a medical expert for the hearing. [rec. doc. 10, p. 6]. However, Case Analysis in September 2012 reported that claimant failed to attend a scheduled consultative exam and did not return his Activities of Daily Living Form, despite repeated requests. (Tr. 17, 56-61). Because claimant did not cooperate in attending the exam or filling out the required forms, his argument lacks merit.

Additionally, the Fifth Circuit has emphasized that the absence of a medical source statement "does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Rather, where no medical statement has been provided, the inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record. *Id*. As set forth above, the undersigned finds that the ALJ's opinion is supported by the medical evidence of record.

Further, claimant has failed to show that he was prejudiced by the lack of a medical source statement. As the Fifth Circuit has observed: "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *see also Frank*, 326 F.3d 618 at (applying harmless error analysis in the disability benefits context). Reversal is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (*citing Ripley*, 67 F.3d at 557). As claimant has not shown that additional evidence would have been produced which might have led to a different decision, he cannot establish that he was prejudice by the ALJ's failure to fully develop the record.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this

Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 29th day of June, 2016, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE